## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MELANIE LEWIS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:18-cv-00029** |
| | ) | **Judge Crenshaw/Frensley** |
| | ) | |
| | ) | |
| **JEFFREY SHELTON, in his** | ) | |
| **individual capacity** | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION AND BACKGROUND

In this civil rights case, Plaintiff Melanie Lewis ("Ms. Lewis") alleges that her Eighth

Amendment rights were violated when Defendant Jeffrey Shelton ("Mr. Shelton") used excessive

force against her and Cumberland County medical personnel evinced deliberate indifference to her

serious medical needs. Docket No. 1, pp. 7-8.

This matter is before the Court upon a Motion for Summary Judgment filed by Mr. Shelton.

Docket No. 28. Along with his Motion, Mr. Shelton has filed a supporting Memorandum of Law,

a Statement of Undisputed Facts, excerpts of Ms. Lewis's Deposition, and the Declarations of

himself, Tim Claflin, Phillip Hughes, Aaron Hamby, and Chris West. Docket Nos. 29, 30-1, 30-2,

30-3, 30-4, 30-5, 30-6, 31. As grounds for his Motion, Mr. Shelton argues that Ms. Lewis's

Complaint should be dismissed because: (1) Ms. Lewis's claims are barred, in whole or in part, by

the statute of limitations; (2) Mr. Shelton is entitled to qualified immunity; and (3) Ms. Lewis

cannot establish that she suffered constitutional deprivations as alleged. Docket No. 28.

Ms. Lewis has not responded to the instant Motion or to the Statement of Undisputed Facts.

## A. Procedural Background

On March 28, 2018, Ms. Lewis filed her initial Complaint in this pro se, in forma pauperis action pursuant to 42 U.S.C. § 1983. Docket No. 1. Ms. Lewis brought suit against Cumberland County Jail, as well as the following county employees, in their individual and official capacities: Sheriff Casey Cox, Jeffrey Shelton, Captain Tim Claflin, and "Unknown Medical Personnel." *Id* at 3-4. In her Complaint, Ms. Lewis alleges violations of her Eighth Amendment rights, arguing that: (1) Mr. Shelton used excessive force in his response to Ms. Lewis's attack on April 27, 2017; and (2) Cumberland County authorities evinced deliberate indifference to Ms. Lewis's serious medical needs by denying her prescribed seizure and mental health medication during her incarceration, failing to transport her to the hospital in a timely manner while she was in labor, and failing to treat her abscessed tooth. *Id* at 7-8.

Ms. Lewis seeks compensatory and punitive damages, an award of attorney fees, and a declaratory judgment requiring Defendants to review medical and security protocols. *Id.* Following the Memorandum Order of Judge Crenshaw on December 13, 2018, the only remaining defendants in this action are Jeffrey Shelton, in his individual capacity, and "Unknown Medical Personnel." Docket Nos. 7, 8.

On December 13, 2018, Ms. Lewis was ordered to return service packets for Mr. Shelton and "Unknown Medical Personnel" within 21 days. Docket No. 8, p. 2. After failing to meet this deadline, Ms. Lewis was ordered to produce service packets 21 days from January 8, 2019. Docket No. 10. Ms. Lewis again failed to meet the court-ordered deadline and was ordered, on February 13, 2019, to return service packets by March 1, 2019. Docket No. 11. At Ms. Lewis's request, the Court granted an extension until April 19, 2019. Docket Nos. 14-15. Summons were issued on April 23, 2019, and Mr. Shelton was served on May 10, 2019. Docket Nos. 17, 19. Defendant

"Unknown Medical Personnel" remains unidentified and unserved. Docket No. 20. On May 31, 2019, Mr. Shelton filed an Answer denying the allegations and asserting defenses of statute of limitations and qualified immunity. Docket No. 21.

Mr. Shelton filed this Motion for Summary Judgment on March 13, 2020. Docket No. 28. Ms. Lewis has not responded to the instant Motion or to the Statement of Undisputed Facts.

For the reasons discussed below, the undersigned find that Ms. Lewis's actions are barred by the statute of limitations; even if they were not time-barred, however, Ms. Lewis's claims would still fail. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 28) be GRANTED and that this action be DISMISSED.

## II. FACTS[1]

### A.      Declaration of Tim Claflin

At all times relevant to this action, Tim Claflin was serving as Jail Administrator for Cumberland County, Tennessee; he has attached copies of Ms. Lewis's original records. Docket No. 30-1, Declaration of Tim Claflin, ¶ 2.

Cumberland County Jail contracts with a physician to provide medical services and oversight to jail nursing staff. *Id.* As part of business practices, the medical staff keeps records regarding the treatment provided to inmates. *Id.* These records are owned by the County, but such records are not available to jail personnel. *Id.* Inmate healthcare information is provided on an as-needed basis. *Id.* When inmates come into the jail, Tennessee Corrections Institute Regulations require that any prescribed medications be verified. *Id.*, ¶ 3. A contract physician oversees the nursing staff, and only the jail physician is qualified to prescribe medications or order specific treatment for inmates while they are in custody and under the care of jail medical personnel. *Id.*

On September 14, 2016, Ms. Lewis entered Cumberland County Jail after violating her terms of probation. *Id.*, ¶ 4. On January 5, 2017, Nurse Starnes attempted to obtain a release from

Ms. Lewis to obtain medical records, but Ms. Lewis refused on account of her upcoming court date. *Id.* Ms. Lewis was released from jail on January 26, 2017. *Id.*

From March 3, 2017 to June 9, 2017, Ms. Lewis was again incarcerated in Cumberland County Jail. *Id.*, ¶ 5. On April 23, 2017, Ms. Lewis got into a fight with another female inmate, and on April 27, 2017, she assaulted Jeff Shelton. *Id.* Ms. Lewis's assault on Jeff Shelton resulted in a new charge for aggravated assault, to which Ms. Lewis pled guilty. *Id.*

At no time during either of these incarcerations was Ms. Lewis pregnant or suffering from an abscessed tooth. *Id.*, ¶ 6. However, jail records indicate that Ms. Lewis entered Cumberland County Jail in November of 2014 with an abscessed tooth and in August of 2015 pregnant. *Id.*

**B.**      **Ms. Lewis's Deposition**

Ms. Lewis was not suffering from an abscessed tooth when she was incarcerated in Cumberland County Jail in September of 2016. Docket No. 30-6, p. 2. Ms. Lewis was not pregnant during her incarceration between September of 2016 and January of 2017. *Id.* at 3.

**C.**      **Declaration of Jeff Shelton**

Prior to being attacked by Ms. Lewis, Mr. Shelton had responded to two situations in which Ms. Lewis alleged to have been suffering from seizures. Docket No. 30-2, Declaration of Jeff Shelton, ¶ 3. Mr. Shelton witnessed several seizures throughout his time working in the jail. *Id.* On each occasion, however, Ms. Lewis was responsive during the alleged seizures. *Id.* After these incidents, Ms. Lewis threatened to "pick up new charges" if Mr. Shelton accused her of faking seizures. *Id.* Shortly before the attack, Ms. Lewis began calling Mr. Shelton names and referring to herself as "Felony Melanie." *Id.* Mr. Shelton perceived this to be her attempts to intimidate or threaten him. *Id.*

On April 27, 2017, Mr. Shelton was passing out medications near the Women's Pod. *Id.*, ¶

4

3. Ms. Lewis was out of the Pod. *Id.* Ms. Lewis ran out from the Women's Hallway, yelled "I have something for you," and punched Mr. Shelton in the mouth with a closed fist. *Id.* She continued to throw punches at Mr. Shelton, whose attempts at defending himself were ineffective. *Id.* Mr. Shelton fell to the floor on his back, and Ms. Lewis advanced, stating, "Now I got you!" *Id.*, ¶ 4. Ms. Lewis straddled Mr. Shelton and continued to strike him. *Id.* Mr. Shelton, terrified, continued to attempt to defend himself against Ms. Lewis's blows. *Id.*

Finally, Mr. Shelton was able to sweep Ms. Lewis to the ground. *Id.*, ¶ 5. Mr. Shelton straddled Ms. Lewis and tried to flip her onto her stomach to handcuff her. *Id.* Throughout the altercation, Ms. Lewis continued to struggle, curse, scream, and flail. *Id.* As Mr. Shelton grappled with her, he yelled repeatedly to tell her to stop resisting, but Ms. Lewis did not comply. *Id.* Ms. Lewis and Mr. Shelton ended up against a wall, which limited Ms. Lewis's movement. *Id.* Mr. Shelton was then able to grab one of Ms. Lewis's arms but struggled to grab the other. *Id.* Around this time, other corrections officers came to Mr. Shelton's aid. *Id.* Someone tapped Mr. Shelton's shoulder and ordered Ms. Lewis onto her stomach. *Id.* Ms. Lewis complied, and Mr. Shelton applied a wrist lock. *Id.* Chris West and Aaron Hamby took over handcuffing Ms. Lewis as Mr. Shelton stepped away, out of breath. *Id.* Per protocol, Ms. Lewis was led to Booking to be seen by medical personnel. *Id.*, ¶ 6. Ms. Lewis continued to yell obscenities at Mr. Shelton. *Id.*

Mr. Shelton was unable to effect sufficient force to gain control of the situation or Ms. Lewis until help arrived to assist him. *Id.* At no time did Mr. Shelton place a knee in Ms. Lewis's back, nor was he involved in cuffing Ms. Lewis or in tightening her handcuffs. *Id.* Ms. Lewis never mentioned that her handcuffs were too tight. *Id.*

Mr. Shelton feared for his safety and sustained injuries as a result of Ms. Lewis's attack. *Id.*, ¶ 7. Mr. Shelton had swelling and bruising on the left side of his face and right lower mouth,

5

a cut inside his mouth, right wrist pain, and left knee pain and bruising. *Id.*

**D.    Declaration of Phillip Hughes**

On April 27, 2017, Phillip Hughes was working as a corrections officer for Cumberland County when he responded to a call from Tower personnel regarding an officer in distress in Women's Housing. Docket No. 30-3, Declaration of Phillip Hughes, ¶ 2. As he rounded the corner to Women's Housing, Officer Hughes heard Mr. Shelton shouting "Stop resisting!" *Id.*, ¶ 3. Officer Hughes then saw Ms. Lewis and Mr. Shelton on the floor. *Id.* Mr. Shelton was pale, out of breath, and bleeding by the mouth. *Id.* Mr. Shelton did not have Ms. Lewis under control. *Id.* Mr. Shelton had Ms. Lewis's right wrist and was trying to roll her onto her stomach while continually advising Ms. Lewis to stop resisting. *Id.* Ms. Lewis continued to resist. *Id.* At that time, Officer Hughes ordered Ms. Lewis onto her stomach. *Id.*, ¶ 4. Ms. Lewis complied. *Id.* Another officer handcuffed Ms. Lewis and took her to Booking. *Id.*

At no time did Mr. Shelton use any force on Ms. Lewis after she had been subdued. *Id.* At no time did Officer Hughes witness Mr. Shelton put his knee in Ms. Lewis's back. *Id.* Ms. Lewis never complained of her handcuffs being too tight. *Id.*

**E.    Declaration of Aaron Hamby**

On April 27, 2017, Aaron Hamby was working as a corrections officer for Cumberland County and responded to a call from Tower personnel about a corrections officer needing assistance. Docket No. 30-5, Declaration of Aaron Hamby, ¶ 2. Officer Hamby ran to the hallway and saw Ms. Lewis fighting Mr. Shelton. *Id.* Ms. Lewis was on the floor, pushing, shoving, and rolling against the wall. *Id.* Mr. Shelton was pale and sweating, fighting to get Ms. Lewis under control as she continued yelling, cursing, and resisting. *Id.*

Another corrections officer ordered Ms. Lewis to roll over onto her stomach, and she

finally complied. *Id.*, ¶ 4. Officer Hamby and another officer handcuffed Ms. Lewis and took her to the front to be checked by the nurse, per protocol. *Id.* Ms. Lewis continued to yell and curse at Mr. Shelton as she walked away. *Id.*

At no time did Mr. Shelton use any force on Ms. Lewis after she was subdued. *Id.*, ¶ 5. At no time did Mr. Shelton put his knee in Ms. Lewis's back. *Id.*

### F.    Declaration of Chris West

On April 27, 2017, Chris West was working as a corrections officer for Cumberland County and responded to a call from Tower personnel instructing all "rovers" to go to Women's Housing. Docket No. 30-4, Declaration of Chris West, ¶ 2. Officer West ran to the area and initially saw Mr. Shelton straddling Ms. Lewis on the ground as he tried to handcuff her. *Id.* Ms. Lewis was uncompliant, lying on her side, twisting and cursing. *Id.* Mr. Shelton was out of breath and struggling. *Id.* Officer West only observed Mr. Shelton use the force necessary to try to gain compliance. *Id.* However, Mr. Shelton still could not gain control of the situation or get Ms. Lewis handcuffed, so Officer West and another officer had to handcuff her. *Id.* After she was cuffed, Ms. Lewis was taken to Booking by other officers. *Id.* Ms. Lewis continued to scream and curse at Mr. Shelton as she was led down the hall. *Id.* Officer West noticed that Mr. Shelton had a fresh injury to his eye after the altercation. *Id.*

At no time did Mr. Shelton use any force on Ms. Lewis after she was subdued. *Id.*, ¶ 3. At no time did Mr. Shelton put his knee in Ms. Lewis's back or tighten her handcuffs. *Id.* Ms. Lewis never complained of her handcuffs being too tight. *Id.*

### III.    LAW AND ANALYSIS

### A.    Statute of Limitations

Mr. Shelton asserts that Ms. Lewis's actions are time-barred because the statute of

limitations for Ms. Lewis's claims has run. Docket Nos. 28, p. 1; 29, p. 5.

Federal courts apply state law to determine the statute of limitations applicable to claims brought pursuant to federal civil rights statutes. *See, e.g., Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Tennessee law provides for a one-year statute of limitations for civil actions brought under the federal civil rights statutes. T.C.A. § 28-3-104(a)(3); *Roberson*, 399 F.3d at 794. Tennessee Rule of Civil Procedure 3 further asserts that:

> All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. **If process remains unissued for 90 days or is not served within 90 days from issuance**, regardless of the reason, the **plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations** unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, **within one year of filing the complaint.**

Tenn. R. Civ. P. 3 (emphasis added).

The Plaintiff may initially file a complaint that names an unknown Defendant by using a "John Doe" appellation or similar pseudonym. *Smith v. City of Chattanooga*, 2009 WL 3762961, at *12 (E. D. Tenn. November 4, 2009). However, identifying a Defendant in such a way is not enough to commence a civil action against that unknown Defendant. *Id.* The action is commenced against a John Doe Defendant when the Complaint is amended under Rule 15 to specifically name and identify that Defendant by his true name and the Plaintiff effects service of process upon that named Defendant in compliance with Rule 4.

### B.    Local Rules 7.01(a)(3) and 56.01(c) and (f)

Ms. Lewis has failed to respond to Mr. Shelton's Motion for Summary Judgment or Statement of Undisputed Facts.

8

Local Rule 7.01(a)(3) states, in pertinent part:

>**(a)(3). Response.** Except for motions for reconsideration (to which no response shall be filed unless ordered by the Court), any party opposing a motion must serve and file a memorandum of law in response, and, if necessary to support assertions of fact, affidavits and depositions, not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. The response shall not exceed twenty-five (25) pages without leave of Court. **If a timely response is not filed, the motion shall be deemed to be unopposed**, except for motions to reconsider for which no response shall be permitted unless ordered by the Court.

L. R. 7.01 (emphasis added).

With respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (f) state, in pertinent part:

>**(c) Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
>(1) Agreeing that the fact is undisputed;
>
>(2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
>
>(3) Demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record.
>
>. . .
>
>**(f) Failure to Respond.** If a timely response to a moving party's statement of material facts, or a non-moving party's statement of additional facts, is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.

L. R. 56.01.

### C. Motion for Summary Judgment

It would be inappropriate to grant Mr. Shelton's Motion solely on the ground that Ms. Lewis has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his initial] burden . . . . The federal rules require that the party filing a motion for summary judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted).

The Court will, therefore, consider whether Mr. Shelton has met his burdens under the appropriate summary judgment standards discussed below.

Under Federal Rule of Civil Procedure 56(c),

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56.

A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for Summary Judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,*

10

475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

If a nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.*; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

### D.     Qualified Immunity

Mr. Shelton argues that he is entitled to qualified immunity. Docket No. 29, p. 8.

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The right at issue "must have been articulated with a significant degree of particularity," so that it is sufficiently clear to a reasonable official that his or her conduct would violate the right at issue. *Eugene D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989). Qualified immunity is available as long as the official's actions "could reasonably have been thought consistent with the rights [he or she is] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).

The initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's

conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201, *citing Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1973, 114 L. Ed. 2d 277 (1991). If no constitutional right was violated, there is no necessity for further inquiry. *Id.*

A critical question is whether "any official in the defendants' position would understand that what he did violated those rights." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999 (6th Cir. 1994). Qualified immunity, therefore, "does not turn on the subjective good faith of the official; rather, it turns on the 'objective legal reasonableness' of his actions, assessed in light of the legal rules that were 'clearly established' at the time the actions were taken." *Id.* (*quoting Harlow*, 457 U.S. at 818-19). "If officers of reasonable competence could disagree on whether the conduct violated the plaintiff's rights," qualified immunity will apply. *Id.* (citations omitted), *quoting Grossman v. Allen*, 950 F.2d 338, 341 (6th Cir. 1991).

### E.    42 U.S.C. § 1983

### 1.    Generally

Ms. Lewis alleges violations of her Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1.

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983.

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation

12

was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (*overruled in part on other grounds*, *Daniels v. Williams,* 474 U.S. 327, 330-31, 106 S.Ct. 662, 664-65, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2. Eighth Amendment

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S.Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

### a.    Excessive Force

Ms. Lewis alleges that Mr. Shelton used excessive force in his response to Ms. Lewis's attack on April 27, 2017. *See* Docket No. 1.

An inmate's post-conviction excessive force claim is raised "exclusively under the Eighth Amendment's cruel and unusual punishment clause." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). While the Eighth Amendment's prohibition against cruel and unusual punishment prohibits the wanton and unnecessary infliction of pain upon prisoners, the mere fact that a prisoner was subjected to physical contact which may have been forceful does not, by itself, show an Eighth Amendment violation. *Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir. 1986). "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Id.*, citing *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986).

Where a prison security measure is involved, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21.

### b.    Deliberate Indifference to Serious Medical Needs

Ms. Lewis contends that jail medical staff evinced deliberate indifference to her serious medical needs by denying her access to prescribed medications, failing to transport her to the hospital in a timely manner while she was in labor, and failing to treat her abscessed tooth. *See* Docket No. 1, pp. 7-8. It is undisputed, however, that Ms. Lewis was neither pregnant nor suffering from an abscessed tooth during her incarceration at Cumberland County Jail. *See* Docket Nos. 30-1, ¶ 6; 30-1, pp. 2-3. Thus, the Court will consider only Ms. Lewis's claim that jail medical staff evinced deliberate indifference to her serious medical needs by denying her access to prescribed

medications.

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle*, 429 U.S. at 103.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id* at 104 (citations omitted). The Supreme Court explained that "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," it states a claim under § 1983. *Id.* at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Id.* at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering. . . ." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, therefore, are not required to prove they suffer from an actual

15

physical injury. *Boretti v. Wiscomb*, 930 F.2d 1150, 1155 (6th Cir. 1991), *citing Parrish v. Johnson*, 800 F.2d 600, 610 (6th Cir. 1986). At the very least, however, plaintiffs must allege unnecessary pain or suffering due to prison officials' deliberate indifference. *Id.*

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm. . . ." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). However, there must be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988), *citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this *individual prison official* aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999) (emphasis in original), *citing Farmer*, 511 U.S. at 837, 844.

**F.    The Case at Bar**

As an initial matter, Ms. Lewis's claims against all Defendants are time-barred because she failed to serve process upon Defendants within the allotted one-year time frame. *See* T.C.A. § 28-3-104(a)(3); Tenn. R. Civ. P. 3; *Roberson*, 399 F.3d at 794.

Because Ms. Lewis's allegations against Mr. Shelton pertains to a single incident, i.e., her assault on Mr. Shelton on April 27, 2017, she had one year from that date to file her lawsuit against him. *See* T.C.A. § 28-3-104(a)(3); Tenn. R. Civ. P. 3; Docket No. 1. While Ms. Lewis filed her lawsuit within one year, she failed to serve Mr. Shelton until May 10, 2019, more than two years after the date of the alleged incident. Docket No. 19. Accordingly, her claims against Mr. Shelton

are time-barred. *See* T.C.A. § 28-3-104(a)(3); Tenn. R. Civ. P. 3.

Because Ms. Lewis claimed to have been denied medical treatment multiple times over the course of her incarceration from September 2016 to June 2017 at Cumberland County Jail, she had, at most, one year from the date of her release to file her lawsuit in this matter. *See* T.C.A. § 28-3-104(a)(3); Tenn. R. Civ. P. 3; Docket No. 1. As above, Ms. Lewis did file her lawsuit in a timely manner, but her failure to ever identify or serve Defendant "Unknown Medical Personnel" resulted in a time bar on these claims as well. *See* T.C.A. § 28-3-104(a)(3); Tenn. R. Civ. P. 3.

Despite being be provided the opportunity for limited early discovery to identify the unnamed Defendants and direction to file an amended complaint, (Docket No. 8) the Plaintiff failed to do so. Any motion to amend the Complaint under Rule 15 at this point and time would be futile as the statute of limitations has run on those claims.

Even if they were not time-barred, however, Ms. Lewis's claims would still fail for the reasons discussed below.

Pursuant to Local Rule 56.01(f), Ms. Lewis's failure to respond to Defendant's Motion or Statement of Undisputed Facts indicates "the asserted facts shall be deemed undisputed for purposes of summary judgment." L. R. 56.01. Accordingly, there are no genuine issues as to any material fact, and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

The Court finds that Ms. Lewis failed to make a showing sufficient to establish that her constitutional rights were violated, an element essential to her case on which she would bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23. Thus, the Court finds that there is no genuine issue as to any material fact. *See id.* Therefore, Mr. Shelton is entitled to summary judgment as a matter of law. *See id.*; *Williams*, 187 F.3d at 537-38.

Taken in the light most favorable Ms. Lewis, the facts alleged fail to show that Mr. Shelton's conduct violated Ms. Lewis's constitutional rights. *See Saucier*, 533 U.S. at 201. Because of this, Ms. Lewis's excessive force claim against Mr. Shelton fails for lack of support; alternatively, Mr. Shelton is entitled to qualified immunity. *See id.*

Ms. Lewis argues that Mr. Shelton violated her Eighth Amendment right by using excessive force while restraining her after she attacked him. Docket No. 1, p. 7. Ms. Lewis alleges that, after she struck Mr. Shelton on April 27, 2017, Mr. Shelton responded by striking her in return. *Id.* Ms. Lewis further alleges that Mr. Shelton jumped on Ms. Lewis's back after ordering her to the ground and jammed his knee into her mid-back, despite being aware of Ms. Lewis's prior back surgery. *Id.* After another officer handcuffed Ms. Lewis, Ms. Lewis contends that Mr. Shelton tightened the handcuffs until Ms. Lewis lost feeling in her arms. *Id.* As a result of this altercation, Ms. Lewis avers that she suffered "multiple bruises on her back, arms and wrists as well as a black eye." *Id.*

However, the undisputed evidence fails to corroborate Ms. Lewis's allegations or to establish that Mr. Shelton violated her Eighth Amendment right. The undisputed evidence shows that Ms. Lewis struck Mr. Shelton multiple times, causing him to fear for his safety. Docket No. 30-2, ¶ 4. Mr. Shelton then straddled Ms. Lewis, attempting to restrain her, but was unsuccessful until other officers showed up to assist. Docket No. 30-2, ¶ 5, Docket No. 30-3, ¶ 3, Docket No. 30-4, ¶ 2. The Declarations of Mr. Shelton and Officers Hamby and Hughes establish that Mr. Shelton did not exert any force on Ms. Lewis after she was subdued. Docket No. 30-3, ¶ 4; Docket No. 30-5, ¶ 5. This evidence further establishes that Mr. Shelton did not put his knee in Ms. Lewis's back or tighten her handcuffs. Docket No. 30-2, ¶ 6; Docket No. 30-3, ¶ 4; Docket No. 30-4, ¶ 3; Docket No. 30-5, ¶ 5. Finally, the evidence shows that Ms. Lewis never complained that her

18

handcuffs were too tight. Docket No. 30-2, ¶ 6; Docket No. 30-3, ¶ 4; Docket No. 30-4, ¶ 3. Thus, the undisputed evidence does not show that Mr. Shelton's conduct violated Ms. Lewis's Eighth Amendment right or any other constitutional right. Accordingly, Ms. Lewis's claim fails for lack of evidence; alternatively, Ms. Lewis's failure to establish a violation of her constitutional right entitles Mr. Shelton to qualified immunity.

Turning to Defendant "Unknown Medical Personnel," the claims against this Defendant fail because Ms. Lewis has not set forth facts in this action that support a constitutional claim based on allegations that she was denied adequate medical care.[2] While Ms. Lewis has presented evidence sufficient to support her allegations of a history of seizures, the undisputed evidence fails to show that Defendants were deliberately indifferent to Ms. Lewis's serious medical issues.

Ms. Lewis alleges that, during her incarceration at the Cumberland County Jail, she was denied all medications that had previously been prescribed for treatment of seizure-related issues and mental health issues. Docket No. 1, p. 7. Ms. Lewis maintains that her mother brought her medications to the jail, but jail personnel refused to give them to Ms. Lewis, and jail medical staff refused to prescribe replacement medications. *Id.* Ms. Lewis avers that she asked jail medical staff to obtain her prior medical records from her personal physicians and signed multiple releases. *Id.*

---

[2] Alternatively, as noted above this claim fails because of Ms. Lewis's failure to identify or serve parties. Federal Rule of Civil Procedure 10(a) requires Ms. Lewis to "name all the parties" in the Complaint. Fed. R. Civ. P. 10. Federal Rule of Civil Procedure 4(m) further requires that all Defendants be served within 90 days. Fed. R. Civ. P. 4. On December 13, 2018, Judge Crenshaw granted Ms. Lewis early discovery to identify the medical personnel responsible for her care at the jail and directed Ms. Lewis to identify and serve process upon such defendants. Docket No. 7, p. 7. Judge Crenshaw further reminded Ms. Lewis of the 90-day requirement of Fed. R. Civ. P. 4(m) and notified Ms. Lewis that the Court would count the 90 days from the date of the Memorandum Order. *Id.* Ms. Lewis did file an Amendment to her Complaint but failed to identify the medical personnel against whom the claim was filed. Docket No. 16. Defendant "Unknown Medical Personnel" remains unserved.

Ms. Lewis's medical records dated August 31, 2015 note a history of seizures, including a seizure in February of 2015. Docket No. 30-1, p. 9. Mr. Shelton's undisputed declaration also indicates that he had responded to Ms. Lewis's alleged seizures on previous occasions. Docket No. 30-2, ¶ 3. Taken in the light most favorable to Ms. Lewis, such evidence supports the allegation that Ms. Lewis was suffering from severe medical conditions and that jail medical staff were aware of these conditions.

However, Ms. Lewis fails to establish that Defendant "Unknown Medical Personnel" was deliberately indifferent to Ms. Lewis's medical issues. Tennessee Corrections Institute Regulations require that any prescribed medications be verified and, further, that only the jail physician is qualified to prescribe medications or order specific treatment for inmates while they are in custody and under the care of jail medical personnel. Docket No. 30-1, ¶ 3. Additionally, the evidence shows that, on January 5, 2017, Nurse Gabby Starnes asked Ms. Lewis to sign a release of medical records from Advanced Spine and Pain Clinic, which Ms. Lewis declined. Docket No. 30-1, p. 4. Ms. Lewis fails to provide evidence to support her allegation that she signed multiple medical releases on other occasions. Thus, the undisputed evidence establishes that jail medical personnel did attempt to verify Ms. Lewis's conditions and provide treatment for her in accordance with Corrections Institute Regulations. Because the undisputed evidence fails to support Ms. Lewis's allegations of deliberate indifference to Ms. Lewis's serious medical needs, this claim fails.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds that the statute of limitations bars Ms. Lewis's claims. Furthermore, the undersigned finds that: (1) Ms. Lewis failed to demonstrate that her constitutional rights were violated, and (2) Mr. Shelton is entitled to qualified immunity. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No.

28) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFREY S. FRENSLEY**
**United States Magistrate Judge**